# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE UBS AG ERISA LITIGATION

No. 08 CV 06696 (RJS)

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED CLASS
ACTION COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

J. Mark Iwry
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile: (202) 293-6330

Robert J. Giuffra, Jr. (RG9969)
Maite Aquino (MA0030)
Suhana S. Han (SH2407)
Matthew A. Schwartz (MS8359)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants*

April 13, 2009

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.　PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT
　　DEFENDANTS BREACHED A FIDUCIARY DUTY OF PRUDENCE
　　AND LOYALTY (COUNT I) ............................................................................ 4

　　A.　Plaintiffs Offer No Support for Their Claim That the
　　　　Administrative and Appointing Defendants Could Remove the
　　　　UBS Stock Fund as an Investment Option for Plan Participants ................. 5

　　B.　Plaintiffs Ignore That the Plus Plan Investment Committee Had No
　　　　Discretion to Remove the UBS Stock Fund as an Investment
　　　　Option ......................................................................................................... 6

　　C.　In Any Event, Plaintiffs Cannot Avoid Application of the *Moench*
　　　　Presumption Here To Bar Their Fiduciary Duty Claims Against
　　　　All Defendants ............................................................................................ 8

　　　　1.　*Moench* Squarely Applies to Eligible Individual Account
　　　　　　Plans, Including the Plans at Issue Here ............................................ 9

　　　　2.　The *Moench* Presumption Does Apply at the Pleading Stage ........... 10

　　　　3.　Plaintiffs Face a Heavy Burden in Trying to Plead Around
　　　　　　*Moench* ........................................................................................... 11

　　　　4.　The *Moench* Presumption Applies Here ......................................... 11

　　D.　Plaintiffs' Purported "Red Flags" Did Not Compel Defendants To
　　　　Investigate UBS's Subprime Exposure ...................................................... 14

II.　PLAINTIFFS DO NOT ESTABLISH THAT DEFENDANTS
　　BREACHED ANY FIDUCIARY DUTY TO "ADEQUATELY
　　INFORM" PLAN PARTICIPANTS (COUNT II) ............................................. 15

　　A.　ERISA Does Not Impose a Generalized Duty To Inform Regarding
　　　　a Company's Financial Health .................................................................. 15

　　B.　The Challenged Disclosures Were Not ERISA Communications .............. 16

III.　THE COURT SHOULD DISMISS THE COMPLAINT'S REMAINING
　　COUNTS ........................................................................................................ 19

　　A.　Count III (Duty to Monitor) Fails to State a Claim. .................................. 20

　　B.　Counts IV, V and VI Fail To State a Claim. ............................................. 21

*Page*

**IV.    PLAINTIFFS' CLAIMS AND RELIEF SOUGHT ARE BARRED IN WHOLE OR IN PART BY THEIR LACK OF STANDING AND WAIVER OF CLAIMS** ........................................................................... 23

**CONCLUSION** ................................................................................................. 25

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Agway, Inc., Employees' 401(k) Thrift Inv. Plan* v. *Magnuson*,
   No. 03-cv-1060, 2006 WL 2934391 (N.D.N.Y. Oct. 22, 2006) ........................................ 9

*Baker* v. *Kingsley*,
   387 F.3d 649 (7th Cir. 2004) ........................................................................... 16

*Beauchem* v. *Rockford Prods. Corp.*,
   No. 01 C 50134, 2003 WL 1562561 (N.D. Ill. Mar. 24, 2003) ...................................... 20

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 ................................................................................... passim

*Bowles* v. *Reade*,
   198 F.3d 752 (9th Cir.1999) ........................................................................ 25

*Conley* v. *Gibson*,
   355 U.S. 41 (1957) ..................................................................................... 4

*Coyne & Delany Co.* v. *Selman*,
   98 F.3d 1457 (4th Cir. 1996) ....................................................................... 20

*Crowley ex rel. Corning, Inc., Inv. Plan* v. *Corning, Inc.*,
   234 F. Supp. 2d 222 (W.D.N.Y. 2002) ............................................................. 17

*Devlin* v. *Empire Blue Cross & Blue Shield*,
   274 F.3d 76 (2d Cir. 2001) ....................................................................... 15-16

*Dobson* v. *Hartford Fin. Servs. Group, Inc.*,
   389 F.3d 386 (2d Cir. 2004) ....................................................................... 16

*Edgar* v. *Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007) ................................................................... passim

*Flanigan* v. *Gen. Elec. Co.*,
   242 F.3d 78 (2d Cir. 2001) ..................................................................... 16-17

*Harris Trust & Sav. Bank* v. *John Hancock Mut. Life Ins. Co*.,
   302 F.3d 18 (2d Cir. 2002) ......................................................................... 7-8

*Henneberry* v. *Sumitomo Corp. of Am.*,
   532 F. Supp. 2d 523 (S.D.N.Y. 2007) ........................................................... 19

*Page(s)*

*Hull* v. *Policy Mgmt. Sys. Corp.*,
No. CIV.A.3:00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) ............................ 17, 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. 02 Civ. 8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) ........................................ 7

*In re Avon Prods., Inc. Sec. Litig.*,
No. 05 Civ. 6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) (magistrate's recommendation), *adopted* 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009) ............... passim

*In re Bausch & Lomb Inc. ERISA Litig.*,
No. 06-CV-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ............................ passim

*In re Bayou Hedge Fund Litig.*,
534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................................................ 4

*In re Calpine Corp. ERISA Litig.*,
No. C 03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) .................................. 19, 22

*In re Coca-Cola Enters. ERISA Litig.*,
No. 1:06-CV-0953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) ...................... 19, 21, 23

*In re Diebold ERISA Litig.*,
No. 5:06 CV 0170, 2008 WL 2225712 (N.D. Oh. May 28, 2008) .................................. 24

*In re Fremont Gen. Corp. Litig.*,
564 F. Supp. 2d 1156 (C.D. Cal. 2008) .......................................................................... 10

*In re Ford Motor Co. ERISA Litig.*,
No. 06-11718, 2008 WL 5377955 (E.D. Mich. Dec. 22, 2008) ...................................... 22

*In re Huntington Bancshares Inc. ERISA Litig.*,
No. 08-cv-0165, 2009 WL 330308 (S.D. Oh. Feb. 9, 2009) .................................. 1, 4, 15

*In re Marsh ERISA Litig.*,
No. 04 Civ. 8157, 2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006) ...................................... 6

*In re McKesson HBOC, Inc. ERISA Litig.*,
391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................................................................... 18, 21

*In re Polaroid ERISA Litig.*,
362 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................... 4, 7, 9, 21

*In re Reliant Energy ERISA Litig.*,
336 F. Supp. 2d 646 (S.D. Tex. 2004) ................................................................... 8, 16-17

*In re Schering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) ..................................................................................... 9, 17

- v -

*Page(s)*

*In re Sears, Roebuck & Co. ERISA Litig.*,
   No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004) ............................................. 23

*In re Sprint Corp. ERISA Litig.*,
   388 F. Supp. 2d 1207 (D. Kan. 2004) .............................................................................. 5

*In re WorldCom, Inc. ERISA Litig.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ................................................................... 17-18, 20

*Kendall* v. *Employees Ret. Plan of Avon Prods.*,
   ___ F.3d ___, 2009 WL 763991 (2d Cir. 2009) ............................................................ 24

*Kirschbaum* v. *Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ................................................................................... passim

*Kuper* v. *Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) ........................................................................... 9, 14, 24

*Kuper* v. *Quantum Chemicals Corp.*,
   852 F. Supp. 1389 (S.D. Oh. 1994) ............................................................................. 14

*Langbecker* v. *Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ....................................................................................... 24

*LaRue* v. *DeWolff, Boberg & Assocs., Inc.*,
   128 S. Ct. 1020, 1026 (2008) ...................................................................................... 25

*Lee* v. *Burkhart*,
   991 F.2d 1004 (2d Cir. 1993) ...................................................................................... 22

*Liss* v. *Smith*,
   991 F. Supp. 278 (S.D.N.Y. 1998) ................................................................................ 5

*Moench* v. *Robertson*,
   62 F.3d 553 (3d Cir. 1995) ..................................................................................... passim

*Morales* v. *TWA*,
   504 U.S. 374 (1992) ...................................................................................................... 7

*Olson* v. *Chem-Trend, Inc.*,
   No. 94 Civ. 75201, 1995 WL 866221 (E.D. Mich. May 30, 1995) ................................ 16

*Powell* v. *Dallas Morning News LP*,
   No. 06-civ-1960-O, 2009 WL 637215 (N.D. Tex. Mar. 11, 2009) ..................................... 6

*Pugh* v. *Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ................................................................................. 9, 14

*Page(s)*

*Richardson* v. *Pension Plan of Bethlehem Steel Corp.*,
    112 F.3d 982 (9th Cir. 1997) ......................................................................... 7

*Rogers* v. *Baxter Int'l Inc.*,
    417 F. Supp. 2d 974 (N.D. Ill. 2006) ......................................................... 5

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................... 18-19

*Silverman* v. *Mut. Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998) ...................................................................... 22

*Stein* v. *Smith*,
    270 F. Supp. 2d 157 (D. Mass. 2003) ....................................................... 10

*Sweeney* v. *Kroger Co.*,
    773 F. Supp. 1266 (E.D. Mo. 1991) ........................................................ 16

*Toussaint* v. *JJ Weiser & Co.*,
    No. 04 Civ. 2592, 2005 WL 356834 (S.D.N.Y. Feb. 13, 2005) ..................... 19

*Urban* v. *Comcast Corp.*,
    No. 08-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008).............................. 8

*Varity* v. *Howe*,
    516 U.S. 489 (1996) ............................................................................... 17

*West* v. *Prudential Sec.*, *Inc.*,
    282 F.3d 935 (7th Cir. 2002)................................................................... 18

*Wright* v. *Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) .................................................................. 9

**STATUTES AND RULES**

Employee Retirement Income Security Act of 1974 ("ERISA")
    29 U.S.C. § 1104 .............................................................................. 3, 24

Rule 8, Fed. R. Civ. P. ..................................................................... passim

Rule 9, Fed. R. Civ. P.................................................................... 18-19

Rule 12, Fed. R. Civ. P. ..................................................................... passim

## PRELIMINARY STATEMENT

Plaintiffs' Opposition does not contest that:

- Plaintiffs have failed to identify a single ERISA plan at any of UBS's peer financial firms (or any other public company) that divested their employee plans of their own stock during the current financial crisis;

- ERISA encourages plans to offer participants the choice of investing in employer stock, and that Plaintiffs here freely bought, held, and sold the UBS Stock Fund; and

- almost all major financial institutions and government regulators missed the supposed "red flags" leading up to the current financial crisis that Plaintiffs allege should caused Defendants to take the extraordinary step of removing the UBS Stock Fund as an investment option for Plan participants.

Unable to contest these dispositive facts, Plaintiffs cannot hold Defendants liable for their losses resulting from Plaintiffs' own affirmative election to invest in the UBS Stock Fund.

In their Opposition, Plaintiffs mischaracterize or ignore the substantial authority compelling dismissal of their ERISA "stock drop" claims. Tellingly, Plaintiffs rely almost exclusively on pre-*Twombly* decisions allowing complaints to survive motions to dismiss merely because those complaints "track[ed]" ERISA's "statutory language." (Pls. Br. at 45.) But *Twombly* explicitly rejected that such formulaic complaints can survive a motion to dismiss. In the past four months alone, three federal courts have dismissed ERISA claims resting on nearly identical "stock drop" theories. *See In re Avon Prods., Inc. Sec. Litig.*, No. 05 Civ. 6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) (magistrate's recommendation), *adopted* 2009 WL 884687 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.) (dismissing ERISA claims alleging decline in stock price because of accounting fraud); *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06 Civ. 6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ("*B&L*") (same); *In re Huntington Bancshares Inc. ERISA Litig.*, No. 08-cv-0165, 2009 WL 330308, at *8-9 (S.D. Oh. Feb. 9, 2009) (dismissing ERISA claims alleging decline in stock price because of fraud relating to subprime writedowns).

Plaintiffs do not contest that Count I for breach of fiduciary duty of prudence and loyalty requires them to show that the Defendants had *discretionary* control over whether the Plans offered the UBS Stock Fund as an investment option for Plan participants. Here, none of the Defendants (except for members of the SIP Committee) had such discretion. As to the Administrative Defendants and the Appointing Defendants,[1] Plaintiffs effectively concede that there are no Plan provisions or other facts showing that these Defendants had any authority whatsoever over the Plans' investment options.

As to the Plus Plan Investment Committee, there is no dispute that the Plus Plan Document, which limits this Committees' fiduciary discretion, states that the UBS Stock Fund "shall be" an investment option for the Plan's participants. By selectively picking language from the Plan Document, Plaintiffs try to create the impression that the Plus Plan Investment Committee had the explicit authority to remove the UBS Stock Fund as an investment option for Plus Plan participants. Because the Plan's terms confer no such authority, this Court should dismiss Count I as to the Plus Plan Investment Committee.

In any event, this Court should dismiss Count I as all Defendants, because Plaintiffs cannot overcome the *Moench* presumption that investment in employer stock is prudent. While claiming that *Moench* has been "rejected, limited, and questioned by numerous courts," Plaintiffs ignore that *Moench* reflects Congressional policy encouraging voluntary employer sponsorship of retirement plans, employee control of their plan investments, and employee ownership of employer stock, and that every appellate court and every District Court

---

[1]        Administrative Defendants are the Plus Plan Administration Committee, its members, and the Plus Plan Administrator. Appointing Defendants are UBS, UBS Americas, UBSFS, the UBS Executive Board and its members, and the UBSFS Executive Board and its members. (*See* Defs. Br. at 23 n.22.)

in this Circuit to consider *Moench* has applied this presumption.  *See* cases cited *infra* at page 9 to 10.

Moreover, Plaintiffs cannot escape that, since *Twombly*, federal courts have overwhelmingly applied *Moench* on motions to dismiss.  Here, where UBS remains a viable, well-capitalized company, and where the decline in UBS's stock price was less than 70% during the putative class period, Plaintiffs simply cannot meet their burden of establishing, under the relevant judicially-noticeable facts, that UBS faced such a sufficiently "dire situation" so as to overcome the *Moench* presumption.  Moreover, because Plaintiffs do not identify fiduciaries at a single other company (financial or otherwise) that divested their ERISA plans of employer stock during the recent financial crisis, they cannot state a claim for breach of Defendants' fiduciary duty of prudence even outside of *Moench*.  *See* 29 U.S.C. § 1104(a)(1)(B) (an ERISA fiduciary must act only "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.").

The Court likewise should dismiss Count II for breach of fiduciary duty to inform. Plaintiffs cite no authority to support their claim that Defendants had a broad "duty to inform" Plan participants about the financial health of a particular investment option, including the UBS Stock Plan, and the weight of authority, which Plaintiffs again mischaracterize or ignore, bars their attempt to state such a claim based on UBS's corporate filings under the securities laws.

The Court also should dismiss Counts III, IV, V, and VI, which respectively allege secondary ERISA violations of breach of the duty to monitor, conflict of interest, co-fiduciary liability, and quantum meruit.  Each of these Counts (i) is derivative of Plaintiffs' legally defective claims in Counts I and II or (ii) fails to state a claim based on the facts alleged.

At bottom, as *Huntington Bancshares* explained, "Defendants cannot be held to a standard that would require them to predict the future of the financial markets so as not to breach their fiduciary duties under ERISA. . . . ERISA was simply not intended to be a shield from the sometimes volatile financial markets." 2009 WL 330308, at *8-9. Because ERISA is not an insurance policy against declines in a plan participant's investment options, this Court should dismiss the Complaint in its entirety.

## ARGUMENT

In their Opposition, Plaintiffs try to evade the Supreme Court's 2007 decision in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007), which squarely governs Plaintiffs' pleading obligation here under Rule 8. Ignoring *Twombly*, Plaintiffs rely almost exclusively on pre-*Twombly* decisions permitting ERISA "stock-drop" suits to survive motions to dismiss under the old standard articulated in *Conley* v. *Gibson*, 355 U.S. 41 (1957), as long as the claims "closely track[ed]" ERISA's "statutory language" (Pls. Br. at 45 (quoting *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) (Pauley, J.)). But *Twombly* repudiated that standard, and now "a formulaic recitation of the elements of a cause of action" will no longer save a complaint from dismissal. *See In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007) (McMahon, J.) (quoting *Twombly*, 550 U.S. at 545).[2]

## I. PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT DEFENDANTS BREACHED A FIDUCIARY DUTY OF PRUDENCE AND LOYALTY (COUNT I).

Count I for breach of the duties of prudence and loyalty fails as a matter of law, because Plaintiffs cannot establish (i) that any of the Defendants (except for members of the SIP

---

[2]     Plaintiffs claim that *Bayou* does not explain the proper Rule 8 pleading standard after *Twombly* because *Bayou* is "a securities fraud case." (Pls. Br. at 13 n.24.) But the language quoted in *Bayou* explicitly concerned Rule 8's standards and, moreover, was a direct quote from *Twombly*.

Committee) had discretion to eliminate the UBS Stock Fund as an investment option for Plan participants, or (ii) that it was imprudent under ERISA to continue affording Plan participants the option of choosing whether to buy, hold, or sell this investment option during the putative class period.

### A. Plaintiffs Offer No Support for Their Claim That the Administrative and Appointing Defendants Could Remove the UBS Stock Fund as an Investment Option for Plan Participants.

Ignoring the terms of the Plan Documents, Plaintiffs seek to hold the Appointing and Administrative Defendants liable for failing to remove the UBS Stock Fund as an investment option for Plan participants. (Pls. Br. at 12-14.) But the Plus Plan Document states: "The Investment Committee shall have responsibility for the selection of the Investment Funds." (Declaration of Robert J. Giuffra, Jr., dated January 16, 2009 ("Giuffra Decl.") Exhibit ("Ex.") 9 (Plus Plan Document) § 10.9(a).) The SIP Plan Document similarly gives the SIP Committee "the exclusive right and discretionary authority with respect to the administration of the Plan." (Giuffra Decl. Ex. 8 (SIP Plan Document) § 10.1.) No one else had the authority to choose Plan investment options, and Plaintiffs cite nothing in the Plan Documents to the contrary. In the face of such terms, "[i]t is well-settled that [the Second] Circuit does not recognize" Plaintiffs' claims that the Appointing and Administrative Defendants had a "*de facto* fiduciary status" to remove the UBS Stock Fund as an investment option. *B&L*, 2008 WL 5234281, at *11.[3]

---

[3] As explained in Defendants' opening brief, the fiduciary roles of the Appointing and Administrative Defendants were limited. As a matter of law, these Defendants were not fiduciaries with regard to the option to invest in the UBS Stock Fund. (Defs. Br. at 23-27.) Plaintiffs rely on *Liss* v. *Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) (Lynch, J.), and *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1229-30 (D. Kan. 2004), both of which simply held that appointing defendants had a duty to monitor their appointees (an issue addressed *infra* at pages 20-21), and *Rogers* v. *Baxter Int'l Inc.*, 417 F. Supp. 2d 974, 980 (N.D. Ill. 2006), which along with *Sprint* explicitly relied on the pre-*Twombly* standard for dismissal. These cases do not shed light on whether Plaintiffs have met their burden under *Twombly* to plead that the Appointing Defendants breached a fiduciary duty of prudence or loyalty.

Moreover, even if this Circuit recognized "de facto" fiduciary status, the Complaint contains no factual assertions supporting this conclusory allegation. Plaintiffs pretend that they need only "parrot[] the language of ERISA without much factual elaboration" to establish "de facto fiduciary status." (Pls. Br. at 14 n.25.)[4] But *Twombly* forecloses this conclusory approach. *See Powell* v. *Dallas Morning News LP*, No. 3:06-CV-1960-O, 2009 WL 637215, at *4, *9 (N.D. Tex. Mar. 11, 2009) (dismissing "blanket allegations" that "failed to allege the specifics of what ERISA and the Plan required of the Committee, or any of its members, their duties, or the when, what, and where of their alleged breaches").[5]

Because (i) this Circuit does not recognize "de facto" fiduciary status, and (ii) the Complaint contains no allegations that any Defendant (except the members of the SIP and the Plus Plan Investment Committees) exercised power over the Plans' investment options, the Court should dismiss Count I against all Defendants who were not on those Committees.

**B.  Plaintiffs Ignore That the Plus Plan Investment Committee Had No Discretion to Remove the UBS Stock Fund as an Investment Option.**

By its terms, the Plus Plan Document unambiguously requires that the UBS Stock Fund be offered as an investment option to Plus Plan participants:

> The Trustee shall invest and reinvest all amounts in each Participant's Accounts, as elected by Participants from among the Investment Funds made available by the Investment Committee from time to time, *one of which shall be the [UBS] Common Stock Fund*. Investment Funds may be added or deleted from time to time by the Investment Committee. . . .

---

[4]     None of the cases cited by Plaintiffs was decided after *Twombly*. (Pls. Br. at 14 n.25.)

[5]     Plaintiffs try to distinguish *In re Marsh ERISA Litig*., No. 04 Civ. 8157, 2006 WL 3706169, at *5 (S.D.N.Y. Dec. 14, 2006) (Kram, J.), a pre-*Twombly* decision, by claiming that Judge Kram allowed the bald allegation of functional fiduciary status to survive a motion to dismiss, because it "track[ed] ERISA's statutory language." (Pls. Br. at 14-15 & n.26.) As explained *supra* pages 1, 4, after *Twombly*, courts have consistently dismissed ERISA claims that merely "track the statutory language."

(Giuffra Decl. Ex. 9 (Plus Plan Document) § 11.2(a) (emphasis added).)   The phrase "one of which shall be the [UBS] Common Stock Fund" imposes on the Committee the absolute duty to offer this as an investment option, thereby removing any fiduciary discretion as to its removal.

Plaintiffs contend that the language "Investment Funds may be added or deleted from time to time" authorizes the Plus Plan Investment Committee to remove the UBS Stock Fund as an investment option.   But this reading would render a nullity the phrase "one of which **shall** be the Common Stock Fund" by treating the UBS Stock Fund like any other Investment Fund that can be added or deleted.   Such a reading conflicts with the basic canon of construction that "[e]ach provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory."   *Richardson* v. *Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (applying ERISA).[6]

Where, as here, an ERISA plan requires that company stock be offered as an investment option for Plan participants, Plaintiff cannot bring an action for breach of fiduciary duty for failing to eliminate company stock as such an option.   While Plaintiffs claim that two district court cases disagree (Pls. Br. at 17-18),[7] the full weight of appellate authority bars their claim for breach of fiduciary duty here.   Thus, in *Harris Trust & Savings Bank* v. *John Hancock Mutual Life Insurance Co.*—a case Plaintiffs studiously ignore—the Second Circuit held that "adherence to [plan] terms by a plan administrator cannot constitute a breach of its fiduciary

---

[6]      Plaintiffs' interpretation also violates the canon that "the specific governs the general."   *Morales* v. *TWA*, 504 U.S. 374, 385 (1992).

[7]      *In re Polaroid* stated that "compliance with the terms of the plan does not, by itself, satisfy ERISA's imperatives," but acknowledged that "courts have narrowly circumscribed when a plaintiff may sue a fiduciary for adhering to the terms of the governing plan."   362 F. Supp. 2d at 474.   *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, stated that the scope of the fiduciaries' discretion under the plans needed more factual development, No. 02 Civ. 8853, 2005 WL 563166, at *5 (S.D.N.Y. Mar. 10, 2005) (Kram, J.), but never held that ERISA may require a fiduciary to violate plan terms.

duties, barring a grant of discretionary authority to the fiduciary."   302 F.3d 18, 29 (2d Cir. 2002).  And, the Third and Fifth Circuits have applied this rule specifically in the context of a plan administrator's power to remove the option to invest in employer stock.  *See Edgar* v. *Avaya*, 503 F.3d 340, 346 (3d Cir. 2007) ("[I]f the trust requires the trustee to invest in a particular stock, then the trustee is immune from judicial inquiry." (internal quotation omitted)); *Kirschbaum* v. *Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) ("Because the Plan's requirements to invest in REI stock are mandatory and were treated as such by REI and the Benefits Committee, we agree with the district court that no fiduciary duties are inherent in the Plan other than to follow its terms.").[8]

Therefore, none of the Plus Plan Defendants can be held liable for not eliminating the option to invest in the UBS Stock Fund.[9]

### C.   In Any Event, Plaintiffs Cannot Avoid Application of the *Moench* Presumption Here To Bar Their Fiduciary Duty Claims Against All Defendants.

Instead of attempting to demonstrate how their Complaint overcomes *Moench*, Plaintiffs attack *Moench* itself, even though this decision is widely accepted and routinely

---

[8]      Plaintiffs try to make much of the Southern District of Texas's decision to deny defendants' motion to dismiss in the case later known as *Kirschbaum*.  *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 667-69 (S.D. Tex. 2004); (Pls. Br. at 17).  But *In re Reliant* presented a factual question not present here: whether the plan's requirement of investment in employer stock applied to the plan participants' individual account or only to the employer matching contributions.  *Id.* at 667.  Therefore, the issue before that court was not whether defendants were immune from liability, but whether such immunity applied to the particular claims at hand.  Plaintiffs also point out that the motion to dismiss was denied in *Urban* v. *Comcast Corp.*, but the summary plan description there "provided that investment options 'may include Company stock,'" and the Eastern District of Pennsylvania held that "nothing in the Plan required or encouraged the Investment Committee to make such an investment available to Plan participants at all."  No. 08 Civ. 773, 2008 WL 4739519, at *2 (E.D. Pa. Oct. 28, 2008).

[9]      The Court also should dismiss all claims against the Committees.  Rather than confront the authority cited by Defendants (Defs. Br. at 28-29), Plaintiffs merely assert—without citing any cases— that a committee must be subject to liability under ERISA because that is how Plaintiffs interpret the statute.  (Pls. Br. at 21.)

applied at the pleading stage.  Because Plaintiffs offer no serious argument that their Complaint

overcomes the *Moench* presumption, they cannot show that Defendants acted imprudently.

### 1.    *Moench* Squarely Applies to Eligible Individual Account Plans, Including the Plans at Issue Here.

Every Court of Appeals and every District Court in this Circuit to consider the

*Moench* presumption has adopted or applied it.  *See*, *e.g.*, *Kirschbaum*, 526 F.3d at 254 (5th

Cir.); *Pugh* v. *Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008); *Kuper* v. *Iovenko*, 66 F.3d 1447,

1459 (6th Cir. 1995); *In re Polaroid*, 362 F. Supp. 2d at 474; *Avon*, 2009 WL 848083, at *10

(recommendation); *B&L*, 2008 WL 5234281, at *4-5; *Agway, Inc., Employees' 401(k) Thrift Inv.

Plan* v. *Magnuson*, No. 03 Civ. 1060, 2006 WL 2934391, at *22 (N.D.N.Y. Oct. 12, 2006).[10]  In

claiming that *Moench* has been "rejected, limited, and questioned by numerous courts" (Pls. Br.

at 22), Plaintiffs cite no cases from the appellate courts or courts in this District.[11]  Plaintiffs'

claimed groundswell of opposition to *Moench* simply does not exist.

Unable to evade the *Moench* presumption, Plaintiffs claim that the Third Circuit's

decision in *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), held that

"the *Moench* presumption applies only to ESOPs" (Pls. Br. at 23), whereas the Plans at issue

here are Eligible Individual Account Plans (EIAPs).  But the Third Circuit revisited this issue

two years later in *Edgar*, which directly held that *Moench* applies to EIAPs, 503 F.3d at 347, and

distinguished *In re Schering-Plough*, *id.* at 347 n.12.  And, *Kirschbaum* expressly held that "[t]he

---

[10]    In *Wright* v. *Oregon Metallurgical Corp.*, the Ninth Circuit applied *Moench*, but did not adopt it because the presumption did not give *enough* deference to the decision not to divest a plan of employer stock.  360 F.3d 1090, 1097-99 & nn.3-4 (9th Cir. 2004).

[11]    The *Moench* presumption exists for good reasons.  As described earlier, ERISA encourages investment in employer stock.  (Defs. Br. at 29-30.)  To eliminate that option would deprive employees of their free choice, which many Plan participants exercised, to hold or sell UBS stock.  ERISA simply does not require plan fiduciaries to predict price movements of company stock.

*Moench* presumption logically applies to any allegations of fiduciary duty breach for failure to divest an EIAP . . . of company stock." 526 F.3d at 254.[12]

### 2.    The *Moench* Presumption Does Apply at the Pleading Stage.

In claiming that *Moench* does not apply on a motion to dismiss, Plaintiffs rely on the pre-*Twombly* standard: it "cannot be said at this stage that plaintiffs can prove no set of facts demonstrating" a breach of ERISA fiduciary duty. (Pls. Br. at 25 n.43 (citing *Stein* v. *Smith*, 270 F. Supp. 2d 157, 172 (D. Mass. 2003).) As described in Defendants' opening brief at 31 n.30, the majority of post-*Twombly* opinions have held that *Moench* applies on a motion to dismiss. Plaintiffs do not even try to distinguish this substantial authority.[13] Indeed, as *Avon* explained just last month in applying *Moench* at the motion to dismiss stage, *Twombly* is particularly important in reviewing the legal sufficiency of ERISA stock drop suits:

> [T]he Rule 12(b)(6) "plausibility" standard would be undercut by sustaining a complaint that does not suggest a basis for overcoming the [*Moench*] presumption, and because allowing such questionable complaints to survive would likely impose significant unwarranted costs on the ERISA plans themselves, when the statute itself is best served by preserving their financial viability.

2009 WL 848083, at *10 (recommendation).

---

[12]    *Moench* itself rejects Plaintiffs' argument that the presumption applies only if a plan absolutely requires investment in employer stock (Pls. Br. at 23-24); the presumption applies when "the fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to [do so]." 62 F.3d 571. Plaintiffs have never disputed that, at a minimum, the SIP and Plus Plans specifically provide for investment in the Common Stock Fund. (Defs. Br. at 10-11.)

[13]    Against all this authority, Plaintiffs cite only one post-*Twombly* opinion, *In re Fremont Gen. Corp. Litig.*, 564 F. Supp. 2d 1156 (C.D. Cal. 2008). But *In re Fremont* merely held that plaintiffs there met their burden of overcoming the presumption on a motion to dismiss by pleading "detailed and specific allegations that Fremont General"—which went bankrupt shortly thereafter—"was in dire financial circumstances." *Id.* at 1159. Such allegations are missing here.

### 3.    Plaintiffs Face a Heavy Burden in Trying to Plead Around *Moench*.

Since *Moench*, courts have repeatedly held that to survive *Moench* a plaintiff must *allege facts* establishing that the employer faced a "dire situation," *Edgar*, 503 F.3d at 348, and that the company's "overall viability appear[ed] to be in jeopardy," *B&L*, 2008 WL 5234281, at *6 (dismissing an ERISA complaint under Rule 12(b)(6)); *see also Avon*, 2009 WL 848083, at *10 (recommendation) ("[M]ost [courts] require pleading and *proof* of an *imminent corporate collapse* or other '*dire situation*' sufficient to compel an ESOP sell-off.") (emphasis added).

With selective quotations from various opinions, Plaintiffs try to hide their "heavy burden," *Kirschbaum*, 526 F.3d at 246, of overcoming *Moench*.  But these cases confirm that *Moench* protects plan fiduciaries from suits such as this one.  For example, Plaintiffs cite the following from *Kirschbaum*: "We do not hold that the *Moench* presumption applies only in the case of investments in stock of a company that is about to collapse."  (Pls. Br. at 26.)  But Plaintiffs omit the rest of the paragraph, which explains why *Moench* is difficult to overcome:

> The presumption, however, is a substantial shield . . . [and] it may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes.  One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from . . . EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest.

526 F.3d at 256 (citation omitted).  Similarly, Plaintiffs cite *Edgar* for the proposition that a company need not be on the brink of bankruptcy before the *Moench* presumption is overcome (Pls. Br. at 26), but they fail to mention *Edgar*'s holding that only a "dire situation" would compel a fiduciary to stop offering company stock as an investment option.  503 F.3d at 348.

### 4.    The *Moench* Presumption Applies Here.

To survive this motion to dismiss, Plaintiffs must establish, taking into account the judicially noticeable facts, that UBS faced such a "dire situation" that the *Moench*

presumption does not apply here.  But, as the facts cited in Defendants' opening brief make clear (*see* Defs. Br. at 33-34), UBS never faced such a "dire situation."

*First*, as a matter of law, the decline in UBS's share price and its performance during the putative class period did not amount to a "dire situation" or put UBS's viability in jeopardy.  The 64% drop in UBS's share price was consistent with those of UBS's peer financial institutions and many other publicly-traded companies, none of which are alleged to have divested their plans of company stock, and the decline in UBS's share price was far less than the class period price decline that courts have required to overcome the *Moench* presumption.[14] (Defs. Br. at 14-15, 31-33.)

*Second*, Plaintiffs do not dispute that during the class period, UBS's Tier 1 capital ratio never fell below 6.9%, and stood at 10.8% on September 30, 2008—far above the 4% mandated by the Federal Reserve and the Federal Deposit Insurance Corporation to establish adequate capitalization.  (Defs. Br. at 18-19.)  Nor do Plaintiffs dispute that numerous financial analysts continued to recommend not only holding but purchasing UBS stock throughout the putative class period (and even after UBS announced its writedowns of previously AAA-rated mortgage-related and ARS), because they viewed UBS as a viable long-term investment.  (Defs. Br. at 19-20.)

Attempting to overcome these undisputed facts barring their claims, Plaintiffs claim that the Swiss Confederation's supposed "$65 billion bailout of UBS" is proof that UBS was in a "dire situation."  (Pls. Br. at 7-8.)  But there was no "$65 billion" bailout.  Rather, in

---

[14]    Plaintiffs earlier claimed that the UBS share price declined by 74% during the putative class period (Compl. ¶ 86), but now, without explanation, claim that 68% is the proper measure.  (Pls. Br. at 8.) As established in Defendants' opening brief, the actual decline was 64%.  (Defs. Br. at 14-15.) Regardless of which of these numbers is correct, they are all insufficient to overcome *Moench*.

exchange for (i) UBS's transference of $60 billion worth of its portfolio of securitized instruments (which UBS retains an option to repurchase) to a fund controlled by the Swiss National Bank, and (ii) the Swiss Confederation providing UBS with CHF 6 billion in capital, UBS issued to the Swiss Confederation CHF 6 billion of mandatory convertible notes carrying an interest rate of 12.5% per annum, convertible to UBS shares after 30 months.  (Ex. 43[15] (UBS, Media Release (Form 6-K) at 2, 4 (Oct. 16, 2008)); Ex. 44 (UBS, 4Q 2008 Report (Form 6-K) at 2, 81 (Feb. 10, 2009)).)  This purported "bailout" was less than the U.S. government's "bailouts" of numerous U.S. financial institutions, including those that did not suffer significant share price declines during the putative class period.[16]   Moreover, the Swiss Confederation's "bailout" enabled UBS to raise its Tier 1 capital ratio even higher, to 11.5% as of February 10, 2009.  (Ex. 44 at 2.)

Unable to allege facts showing that UBS faced a sufficiently "dire situation" during the putative class period so as to overcome the *Moench* presumption, Plaintiffs cite events occurring after that period.  (Pls. Br. at 1-2, 6-8.)  Putting aside that UBS remains safe and well capitalized to this day, such allegations are irrelevant to Plaintiffs' only claim: that Plan fiduciaries breached their duty *during* the putative class period.[17]

---

[15]    Unless indicated otherwise, all further references to "Ex. __" are to the exhibits to the Supplement Declaration of Robert J. Giuffra, Jr., dated April 13, 2009.

[16]    For example, Wells Fargo and JPMorgan Chase both received $25 billion from the U.S. government during the putative class period (Ex. 45 (Wells Fargo, Current Report (Form 8-K) at 1 (Oct. 30, 2008)); Ex. 46 (JPMorgan Chase, Current Report (Form 8-K) at 30 (Nov. 12, 2008), despite a share price increase of 7.4% and decrease of 8.1%, respectively (Defs. Br. at 15).

[17]    Plaintiffs never allege that (i) UBS's writedowns of its ARS positions or (ii) the investigation of UBS's U.S. cross-border business—which constituted a materially insignificant part of UBS's overall business (Defs. Br. at 16-17)—affected UBS's share price.

**D.    Plaintiffs' Purported "Red Flags" Did Not Compel Defendants To Investigate UBS's Subprime Exposure.**

Plaintiffs fail to state a claim for failure to investigate, because they still do not allege specific facts regarding *which* of the many Defendants knew or should have known that UBS faced issues with AAA-rated mortgage-related securities, ARS, or its U.S. cross-border business.  (Pls. Br. at 29-31.)  This omission is fatal to their claim.  *See B&L*, 2008 WL 5234281, at *8 ("[T]he Complaint alleges no specific facts suggesting that the [Defendants] were aware of any material information regarding the financial condition of B&L other than what was publicly disclosed.").

Even if Plaintiffs had specified which Defendants allegedly breached their duty to investigate, their claim would still rest on impermissible speculation.  Plaintiffs contend that Defendants should have known about "red flags" at UBS simply because they were "directors or senior executives."  (Pls. Br. at 29.)[18]  But even before *Twombly*, "[a] conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim; it must be alleged that each defendant was in a position to know or learn of the information."  *Pugh*, 521 F.3d at 701 (affirming dismissal of ERISA claims).

---

[18]    If Plaintiffs are instead referring to Plan administrators, Plaintiffs have never alleged how these employees—none of whom is alleged to have worked in any of the UBS areas alleged to be affected during the putative class period—could have launched a company-wide investigation, much less one that would have yielded complete and conclusive information, or how they should have inferred from a decline in the housing market that the market for UBS's AAA-rated mortgage-related securities or its ARS would suddenly become illiquid in the summer of 2007 and the winter of 2008, respectively. And, even if these administrators had drawn such an inference, or could have conducted such an investigation of their company, Plaintiffs have not shown that the results of an investigation would have caused a prudent fiduciary to conclude that the UBS Stock Fund would become a worthless investment option (which of course has not occurred) and that they should therefore step in and override participants' investment decisions.  *Kuper* v. *Quantum Chemicals Corp.*, 852 F. Supp. 1389, 1397 (S.D. Oh. 1994), *aff'd sub nom. Kuper*, 66 F.3d at 1447.

Moreover, as explained in Defendants' opening brief, even if Plaintiffs had linked these "red flags" to any of the Defendants, none of these "red flags"—all of which concerned general trends in the U.S. real estate market (Compl. ¶¶ 87-98, 112-113), and were indisputably missed by almost every other major financial institution and government regulator—would have put any of the Defendants on notice of the issues with UBS's AAA-rated mortgage-related securities, which, as Plaintiffs ignore, were designed to avoid writedowns in the face of a decline in the real estate market, let alone with UBS's positions in ARS or its U.S. cross-border business. (Defs. Br. at 12-17.)  As *Huntington Bancshares* explained, "Defendants cannot be held to a standard that would require them to predict the future of the financial markets so as not to breach their fiduciary duties under ERISA."  2009 WL 330308, at *8-9 (dismissing an ERISA "stock drop" complaint based on a share price decline in employer stock caused by subprime losses).

Also, because it was not imprudent for the Plan fiduciaries to continue to respect Plan provisions giving participants the right to exercise choice regarding their investments in UBS stock (*see supra* pages 8-13), Plaintiffs cannot, as a matter of law, establish that they were harmed by any purported failure to investigate.  (*See* Defs. Br. 35-37.)

## II.  PLAINTIFFS DO NOT ESTABLISH THAT DEFENDANTS BREACHED ANY FIDUCIARY DUTY TO "ADEQUATELY INFORM" PLAN PARTICIPANTS (COUNT II).

### A.  ERISA Does Not Impose a Generalized Duty To Inform Regarding a Company's Financial Health.

Plaintiffs make no effort to distinguish the binding Second Circuit authority foreclosing their argument that ERISA requires plan fiduciaries to advise plan participants on the prudence of investing in employer stock.  (Defs. Br. at 38-39.)  And, all the law that Plaintiffs do cite involve duties to disclose plan *benefits*, a category of information explicitly required to be disclosed under the ERISA statute.  *See*, *e.g.*, *Devlin* v. *Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001) (reduction in *benefits* may have "violated the plan documents, and in

- 15 –

turn, [ERISA fiduciary duties]"); *Dobson* v. *Hartford Fin. Servs. Group, Inc.*, 389 F.3d 386, 400-402 (2d Cir. 2004) (failure to disclose certain benefit payments).

In trying to shoehorn "financial information about UBS" (Pls. Br. at 33) into the ERISA disclosure category of "plan benefits," Plaintiffs cannot escape the fact that ERISA does not impose any duty to keep plan participants informed of non-public information concerning a company's financial condition, even where such developments might affect the value of company stock. *See Edgar*, 503 F.3d at 350 (no duty to "give investment advice" or "opine on" the stock's condition). Accordingly, the Court should dismiss Plaintiffs' duty to inform claim to the extent it relies on alleged failures to inform Plaintiffs of UBS's financial health.[19]

## B.   The Challenged Disclosures Were Not ERISA Communications.

Tacitly recognizing that they cannot state a claim for general failure to disclose, Plaintiffs claim that Defendants breached their duty to disclose, because the Plans' Summary Plan Descriptions incorporated by reference UBS's allegedly misleading SEC filings. As a matter of law, this argument also fails.

*First*, the challenged statements about UBS's financial health were not made in a fiduciary capacity under ERISA. *See Kirschbaum*, 526 F.3d at 256 (plaintiffs "must demonstrate that the representations were made in a[n ERISA] fiduciary capacity").[20] As the Second Circuit

---

[19]     Plaintiffs likewise ignore *Baker* v. *Kingsley*, 387 F.3d 649, 662 (7th Cir. 2004); *Olson* v. *Chem-Trend, Inc.*, No. 94 Civ. 75201, 1995 WL 866221, at *6 (E.D. Mich. May 30, 1995); and *Sweeney* v. *Kroger Co.*, 773 F. Supp. 1266, 1269 (E.D. Mo. 1991), all holding that a duty to inform does not encompass the employer's financial health. (Defs. Br. at 39 n.35.)

Plaintiffs also ignore Defendants' argument that requiring them to disclose information to Plan participants that they were not required to disclose to the market under the securities laws would either (i) force Defendants to commit insider trading under the securities laws, or (ii) effectively conflict with the securities law regime governing disclosure of certain information. (Defs. Br. at 42 n.38.)

[20]     Relying on the district court's underlying decision in *In Re Reliant Energy*, 336 F. Supp. 2d at 661, Plaintiffs argue that *Kirschbaum* stands for the proposition that, to survive a motion to dismiss, a complaint need only allege that the plan incorporated SEC filings by reference in an ERISA disclosure.

*(footnote continued...)*

has explained, a defendant acts in a fiduciary capacity under ERISA "only to the extent that he has or exercises the described authority or responsibility." *Flanigan* v. *Gen. Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001) (citation and internal quotation marks omitted). Given this functional inquiry, courts have held that, in order to be fiduciary communications under ERISA, statements about a company's financial health must be "intentionally connected" to statements "about the future of plan benefits." *Varity* v. *Howe*, 516 U.S. 489, 504-05 (1996); *see also* Defs. Br. at 40 (citing *Kirschbaum* 526 F.3d at 257; *Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.,* , 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002); *Hull* v. *Policy Mgmt. Sys. Corp.*, No. CIV.A.3:00-778-17, 2001 WL 1836286, at *8 (D.S.C. Feb. 9, 2001)).

Accordingly, numerous courts have held that a Plan document's incorporation by reference of SEC filings does not covert those filings into ERISA communications. *See B&L*, 2008 WL 5234281, at *7-8 ("[T]he [summary plan description's] incorporation by reference of B & L's SEC filings" does not state a claim for breach of duty to disclose); *Avon*, 2009 WL 884687, at *1 (rejecting arguments that SEC filings and corporate statements became ERISA communications simply because they were "embodied in Plan documents").[21] As Judge Cote

_____

*(…continued footnote)*
(Pls. Br. at 36.) But on appeal, the Fifth Circuit explicitly rejected this view. *Kirschbaum*, 526 F.3d at 256-57 (holding that because incorporating SEC filings by reference in disclosures to plan participants is required under the securities laws, "[the company] was discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary").

[21]    Despite Plaintiffs' claim that "this Court" has rejected Defendants' arguments that they did not breach a duty to inform (Pls. Br. at 33-34), the authority on which Plaintiffs rely comes from outside this District, and overlooks the critical distinction between ERISA fiduciary communications and mere references to company communications made in SEC filings. (*Id.* at 35-36 & n.54.) Indeed, *Schering-Plough*, a case from the District of New Jersey and Plaintiffs' centerpiece authority for the proposition that a plan document's incorporation by reference of SEC filings converts such filings into ERISA communications, relied on the position of the Southern District of Texas in *In re Reliant Energy*—a position rejected on appeal by the Fifth Circuit. *Kirschbaum*, 526 F.3d at 256-57. Moreover, as shown *infra* pages 17-18, *WorldCom*, the only case from "this Court" that Plaintiffs cite in their favor, clearly supports dismissal of the breach of duty to inform claim.

has explained, "[a]lthough the SPD incorporates SEC filings by reference and is part of the Section 10(a) prospectus, those connections are insufficient to transform those documents into a basis for ERISA claims against their signatories."  *In re WorldCom, Inc. ERISA Litig*., 263 F. Supp. 2d 745, 760 (S.D.N.Y. 2003).

> *Second*, there is no allegation that Plaintiffs' alleged damages were proximately caused by any supposed failure to disclose.  (Defs. Br. at 41 n.37.)   As the Third Circuit explained in *Edgar*, had the Defendants "publicly released any adverse information," such disclosure "would have resulted in a swift market adjustment" and would have been immediately reflected in the price of employer stock.  503 F.3d at 350 (internal quotation marks omitted); *see also West* v. *Prudential Sec*., *Inc*., 282 F.3d 935, 938 (7th Cir. 2002) (Easterbrook, J.) ("[F]ew propositions in economics are better established than the quick adjustment of securities prices to public information.").   Thus, "the Plans would not have been able to sell their [employer] stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred when the Company [subsequently made negative disclosures]."  *Edgar*, 503 F.3d at 350 (internal quotation marks omitted).[22]

> *Third*, even if Plaintiffs' failure to disclose claim were cognizable under ERISA, such a claim clearly would be based on an alleged fraud—that Defendants knew about the alleged financial difficulties at UBS but concealed or intentionally failed to disclose them to Plan participants—and, therefore, subject to the even stricter pleading standards of Rule 9(b).  *See Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to all claims that "sound

---

[22]    *See also McKesson*, 391 F. Supp. 2d at 837 ("[A]ny such disclosure would immediately cause the company's stock price to drop" and "would severely harm plan participants."); *Kirschbaum*, 526 F.3d at 256 ("[F]rom a practical standpoint, compelling fiduciaries to sell off a plan's holdings of company stock may bring about precisely the result plaintiffs seek to avoid: a drop in the stock price.").

in fraud," "*regardless of the cause of action in which they appear*" (emphasis added) (citation omitted)); *Henneberry* v. *Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 554-55 (S.D.N.Y. 2007) (Leisure, J.) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct" such as violating "[a] party's duty to disclose material facts").  Plaintiffs ignore the well-reasoned decisions that, in ERISA "stock drop" suits similar to this one, have applied Rule 9(b)'s standards to claims of breach of fiduciary duty to inform.  (Defs. Br. at 21 n.21 (citing *In re Calpine Corp. ERISA Litig.*, No. C 03-1685, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005); *In re Coca-Cola Enters. ERISA Litig.*, No. 06-CV-0953, 2007 WL 1810211, at *6 (N.D. Ga. June 20, 2007).)[23]

Plaintiffs cannot save their ERISA duty to disclose claim from dismissal under Rule 9(b) by conclusorily citing to 130 paragraphs of their Complaint (Pls. Br. at 10), none of which actually links any of the many Defendants to the alleged misstatements or provides any evidence of scienter.  Accordingly, the Court should dismiss Count II.

## III.  THE COURT SHOULD DISMISS THE COMPLAINT'S REMAINING COUNTS.

As a matter of law, Plaintiffs also cannot save Counts III, IV, V, and VI, which respectively allege secondary ERISA violations of breach of the duty to monitor, conflict of interest, co-fiduciary liability, and quantum meruit.

---

[23]     Plaintiffs try to distinguish *Toussaint* v. *JJ Weiser & Co.*, No. 04 Civ. 2592, 2005 WL 356834, at *9 (S.D.N.Y. Feb. 13, 2005) (Mukasey, C.J.), by claiming that the court there applied the Rule 8 pleading standard to plaintiffs' allegations of breach of fiduciary duty of "disclosure."  (Pls. Br. at 10 n.19.)   But, unlike here, the allegations of breach of fiduciary duty of disclosure in *Toussaint* did not rest on claims of fraud; and Judge Mukasey applied Rule 9(b)'s heightened pleading requirements to the plaintiffs' allegations that "defendants knowingly concealed acts and omissions committed by each other."  *Id.* at *9.

### A.    Count III (Duty to Monitor) Fails to State a Claim.

Plaintiffs fail to allege adequately that the Appointing Defendants breached an ERISA duty to monitor Plan employees by failing to instruct the Plus Plan Investment Committee and/or the SIP Committee to remove the UBS Stock Fund as an investment option or to provide those committees with inside information concerning UBS's financial health.

*First*, while claiming to argue at length that the "duty to monitor" is well established (Pls. Br. at 37-41), Plaintiffs never describe the *scope* of this duty.  As the Fourth Circuit explained, "courts have properly taken a restrictive of view of [the duty to monitor]," and an appointing fiduciary cannot be liable without being on notice "of possible misadventure" by its appointees.  (Defs. Br. at 43 (citing *Coyne & Delany Co.* v. *Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996)).)  Thus, as Judge Cote explained, the duty to monitor does not include the duty to instruct an investment committee as to investment options, because that requirement "would make any supervisor of an ERISA fiduciary also an ERISA fiduciary."  *WorldCom*, 263 F. Supp. 2d at 760-61 (dismissing failure to monitor claim against board defendants).[24] Accordingly, the Court should reject any attempt to impose on the Appointing Defendants an excessively broad duty to monitor.

*Second*, Plaintiffs do not plead any facts supporting their argument that the Appointing Defendants failed to disclose certain information to the members of the Plus Plan Investment Committee and/or the SIP Committee.  (Defs. Br. at 29-35, 44); *see also Avon*, 2009

---

[24]        *See also Beauchem* v. *Rockford Prods. Corp.*, No. 01 Civ. 50134, 2003 WL 1562561, at *1 (N.D. Ill. Mar. 24, 2003) (dismissing failure to monitor claim because "[n]othing requires or allows [the appointing fiduciary to exercise] control over the Plan Committee beyond appointing its members"); *Hull*, 2001 WL 1836286, at *7 (dismissing claim of breach of duty to provide information against board member whose only fiduciary responsibility was to appoint the investment committee).  Plaintiffs do not attempt to distinguish *Hull*, and provide no support for their argument that *Beauchem* "misunderstands the role of the fiduciary who bears a duty to monitor."  (Pls. Br. at 40 & n.60.)

WL 848083, at *10 (recommendation) (dismissing duty to monitor claim because "Plaintiffs do not identify any information . . . withheld from any Plan fiduciaries, much less by whom").  And, even if the Appointing Defendants had breached such a duty, Plaintiffs have not pled that sharing such inside information would have prevented Plaintiffs' losses, because as explained *supra* n.19 and page 18, and as uncontested, any divestment of the UBS Stock Fund based on such information would have (i) potentially violated insider trading laws, and (ii) caused a sharp decline in UBS's share price, possibly causing greater losses than those that actually occurred.[25]

### B.    Counts IV, V and VI Fail To State a Claim.

*Count IV (Conflict of Interest)*.  Plaintiffs' "conflict of interest" claim alleges that all Defendants were conflicted, "because they leveraged UBS and subjected the Company to sever [sic], undisclosed risks while encouraging Plan participants to save for their retirement with UBS Stock."  (Pls. Br. at 43.)  Remarkably, Plaintiffs try to distinguish *Polaroid* and *McKesson*—both of which dismissed conflict of interest claims on motions to dismiss—on the ground that those cases involved *more colorable* allegations that defendants in those cases had personal holdings of employer stock and so had an incentive to artificially inflate its price.  (Pls. Br. at 43.)[26]  Here, there is not even an allegation of a motive to inflate personal holdings.

*Count V (Co-Fiduciary Duty)*.  Plaintiffs do not contest that, to state an ERISA claim for breach of co-fiduciary duty, the Complaint must adequately plead that Defendants had "actual knowledge" of the co-fiduciary's alleged breach.  Plaintiffs cannot meet this standard.

---

[25]    Plaintiffs argue that *B&L*, *Coca-Cola*, and *Edgar* are distinguishable, because the duty to monitor claims there were dismissed for lack of underlying breach by the appointed fiduciaries.  (Pls. Br. at 40.) But that is exactly the point; here, as shown *supra* sections I and II, there was no underlying breach.

[26]    Stripped of this nonsense distinction, Plaintiffs are forced to rely on a host of pre-*Twombly* cases, all of which contained allegations of compensation tied to stock price or insider trading.  (*See* Pls. Br. at 43-44 & n.63.)  No such allegations exist here.

As demonstrated *supra* pages 5-8, Plaintiffs have not shown that any Defendant, except for the members of the SIP Committee, functioned as a fiduciary with respect to the alleged breaches, or that any Defendant actually breached any fiduciary duties.  Plaintiffs' failure to adequately allege any underlying breach of fiduciary duty requires dismissal of co-fiduciary duty claims.  *See*, *e.g.*, *Calpine*, 2005 WL 1431506, at *8.  Moreover, Plaintiffs do not even argue that they have adequately pled that any of the Defendants acted with the requisite knowledge of their co-fiduciary's purported breaches.[27]  Rather, without addressing the "knowledge" requirement, Plaintiffs simply point to a host of pre-*Twombly* cases allowing co-fiduciary claims to survive a motion to dismiss because the allegations in those cases "closely track[] the statutory language."  (Pls. Br. at 45.)[28]

   **Count VI (*Quantum Meruit*).**  Plaintiffs initially made a claim for *quantum meruit* based on their false claim that "UBS benefited . . . by discharging its obligations to make contributions to the Plans in amounts specified by contributing UBS Stock to the Plans while the value of the stock was inflated" (Compl. ¶ 277), when, in fact, UBS contributed *cash* to the Plans

---

[27]     *Silverman* v. *Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 106 (2d Cir. 1998), on which Plaintiffs rely (Pls. Br. at 45), stated only that ERISA "provides for extraordinarily broad liability for co-fiduciaries" within the context of determining whether a fiduciary is a co-fiduciary with respect to particular assets of a particular plan, a dispute not at issue in this action.  *Silverman*, in fact, confirmed the legal standard set forth in Defendants' motion to dismiss, namely that "in order to satisfy the necessary elements imposed by [§ 405(a)], [a plaintiff] must show that (i) [the defendant] had knowledge of the [co-fiduciary's breach], (ii) [the defendant] failed to make reasonable efforts to remedy the [co-fiduciary's] breach, and (iii) the fund's loss resulted from that failure."  *Id*. at 104.

[28]     Plaintiffs try to distinguish *Lee* v. *Burkhart*, 991 F.2d 1004 (2d Cir. 1993), by claiming that "the complaint [there] failed to include **any** allegations . . . that the employer failed to disclose the information."  (Pls. Br. at 45-46.)  In fact, *Lee* upheld dismissal of the co-fiduciary breach claims because the complaint failed to allege that "Connecticut General knew about P & W's [alleged breach]."  *Lee*, 991 F.2d at 1001.  After *Twombly*, Plaintiffs' bald allegation that Defendants in this action knew of each other's breaches is equivalent to the defective pleadings dismissed in *Lee*.

   *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 919 (E.D. Mich. 2008), the only post-*Twombly* case on which Plaintiffs rely for their argument that "[c]ourts routinely uphold co-fiduciary duty claims substantially identical to the claim alleged here" (Pls. Br. at 45), did not state any of the allegations on which it based its determination, and so cannot provide guidance to this Court.

(Defs. Br. at 47 n.39).  Apparently recognizing their error, Plaintiffs now claim that Count VI is

"simply an attempt to hold UBS vicariously liable for the purported breaches of others."  (Pls.

Br. at 43 n.62.)[29]  Plaintiffs fail to explain how this states a cause of action under ERISA.[30]

## IV.  PLAINTIFFS' CLAIMS AND RELIEF SOUGHT ARE BARRED IN WHOLE OR IN PART BY THEIR LACK OF STANDING AND WAIVER OF CLAIMS.

*Plaintiffs lack standing to bring claims for certain time periods.*   In their

Opposition, Plaintiffs set up the straw man that "Defendants argue that Plaintiffs . . . lack

standing because they sold their Plan holdings in summer 2008."   (Pls. Br. at 11-12.)

Defendants, however, have moved to dismiss Plaintiffs' claims in part because (i) Plaintiffs

Taveras, Stanislaus, and McKevitt lacked standing to bring claims for damages purportedly

suffered by other Plan participants *after* those plaintiffs terminated their Plan accounts, and (ii)

all Plaintiffs lacked standing to bring claims for damages purportedly suffered *after* Plaintiffs

concluded that UBS stock was an "imprudent" investment option.  (Defs. Br. at 47-49.)

Plaintiffs do not deny that Taveras, Stanislaus, and McKevitt divested their

accounts of UBS stock prior to the end of the putative class period, or that all Plaintiffs

concluded well before the end of the putative class period (albeit erroneously) that UBS stock

was an "imprudent" investment option.  Instead, they cite numerous opinions for the proposition

that former plan participants can sue for damages allegedly suffered *while* they were still

participants.  None of these cases permits a plaintiff to sue on behalf of himself or a plan for

---

[29]     Based on their citation to *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *9 (N.D. Ill. Mar. 3, 2004), it appears that Plaintiffs (without giving any real clue as to what Count VI alleges) may be attempting to construct a "prohibited transaction" claim based on allegations that the Plans acquired UBS Stock at a knowingly inflated price.  But as *Coca-Cola* explained, this claim "flies in the face" of ERISA's definition, which allows for a prohibited transaction claim only where the Plan acquires the investment for above the "generally recognized market" price, i.e., the price at which the employer stock was publicly trading on the day it was acquired.  2007 WL 1810211, at *17.

[30]     Plaintiffs also do not dispute that this Court should dismiss all claims against certain individuals for the period during which they are not alleged to have been fiduciaries.  (Defs. Br. at 7 n.6.)

damages suffered *after* the plaintiff divested from the plan.  As the Second Circuit recently explained, even where a plaintiff brings ERISA claims on behalf of plan participants, he must show "some injury or deprivation of a right" in order to meet the constitutional threshold for standing.  *Kendall* v. *Employees Ret. Plan of Avon Prods.*, ___ F.3d ___, 2009 WL 763991, at *5 (2d Cir. 2009).[31]

Accordingly, the Court should dismiss Plaintiffs' claims to the extent they seek damages for any period *after* they divested themselves of UBS stock or *after* they concluded (albeit erroneously) that UBS stock was an imprudent investment option.[32]

**McKevitt has waived her claims.**  After conceding that she received monetary compensation in exchange for signing a severance agreement that she would not bring claims for ERISA breaches of fiduciary, McKevitt now claims that she is not, in fact, seeking to benefit directly through this action, but rather is seeking to benefit indirectly through claims on behalf of the SIP Plan participants, of which she is one.  This argument fails as a matter of logic and law.

---

[31]    Plaintiffs likewise mislead the Court by arguing that "Defendants make the related, bogus argument that 'loss causation' . . . must be pled in an ERISA case."  (Pls. Br. at 11 n.21.)  All the cases on which Plaintiffs rely simply address whether loss causation was required in the context of a claim that defendants' actions artificially inflated the stock price of the investment.  Indeed, *In re Diebold ERISA Litig.*, No. 5:06 CV 0170, 2008 WL 2225712, at *10 (N.D. Ohio May 28, 2008), cited by Plaintiffs, acknowledged binding Sixth Circuit precedent requiring a "causal link: between the alleged breach and the harm suffered."  *Id.* (citing *Kuper*, 66 F.3d at 1459-60).

[32]    Although Plaintiffs acknowledge that 404(c) creates an "exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions" (Compl. ¶ 288), they make two legally defective claims why Defendants are not entitled to the 404(c) defense.  *First*, Plaintiffs' claim that 404(c) does not apply because Defendants failed to supply complete and accurate information to Plaintiffs to enable them to make an informed decision to invest in UBS stock fails because, as discussed *supra* section II, the underlying failure to disclose claim also fails.  *Second*, Plaintiffs' claim that 404(c) does not protect fiduciaries from liability for offering employer stock as an investment option "would render the 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary."  *Langbecker* v. *Elec. Data Sys. Corp.*, 476 F.3d 299, 310-11 (5th Cir. 2007) (reversing the district court and holding that the Section 404(c) defense barred plaintiffs' claims).

*First*, because McKevitt cannot recover personal damages in this action, she lacks standing to bring claims on behalf of others. Citing the Ninth Circuit's opinion in *Bowles* v. *Reade*, 198 F.3d 752, 759-61 (9th Cir.1999), and the line of cases following it (Pls. Br. at 49), McKevitt argues that she cannot waive claims on behalf of the SIP Plan. But this line of cases misunderstands ERISA's remedial provision. As the Supreme Court recently explained, a plan participant may bring an action under § 502(a)(2) on behalf of a plan on the ground that recovery to the plan may lead to recovery to that particular participant's individual account. *See LaRue* v. *DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1026 (2008). Thus, it makes little sense to allow McKevitt to bring a claim on behalf of the SIP Plan, given that the only basis for doing so would be her individual recovery, which is barred by her release.

*Second*, Plaintiffs ignore reality by arguing that "Defendants have not addressed *any* of [the] six factors" identified by the Second Circuit as relevant to whether a release of ERISA claims is valid. (Pls. Br. at 50 n.71.) Defendants' opening brief clearly addresses five of the factors: (i) McKevitt is a high school graduate; (ii) she had 45 days to decide to sign the agreement, and a further 7 days after signing to reconsider; (iii) UBSFS advised McKevitt that she should consult a lawyer before signing the agreement; (iv) the agreement plainly states that she waives all claims arising under ERISA; and (v) she received compensation in return for waiving her claims. (Defs. Br. at 49.) As to the sixth factor, Defendants do not contend that McKevitt had input in drafting the severance agreement. These uncontested factors are plain from the documents submitted by Defendants in support of their motion to dismiss.

## CONCLUSION

For these and the other foregoing reasons, this Court should dismiss the Complaint in its entirety for failure to state a claim and deny leave to further amend. (Defs. Br. at 50 & n.42.)

Respectfully submitted,

J. Mark Iwry                           Robert J. Giuffra, Jr. (RG9969)
SULLIVAN & CROMWELL LLP                Maite Aquino (MA0030)
1701 Pennsylvania Avenue, N.W.         Suhana S. Han (SH2407)
Washington, D.C. 20006                 Matthew A. Schwartz (MS8359)
Telephone: (202) 956-7500             SULLIVAN & CROMWELL LLP
Facsimile: (202) 293-6330              125 Broad Street
                                       New York, New York 10004
                                       Telephone: (212) 558-4000
                                       Facsimile: (212) 558-3588

*Counsel for Defendants*

April 13, 2009