# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

No. 08-cv-6696 (RJS)

_____

IN RE UBS ERISA LITIGATION

OPINION AND ORDER
September 29, 2014

_____

RICHARD J. SULLIVAN, District Judge:

Lead Plaintiff, Debra Taveras ("Plaintiff"), brings this putative class action against UBS and certain of its committees, committee members, and directors (collectively, "Defendants"), alleging violations of fiduciary duties established by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.[1] Now before the Court are Defendants' motion to dismiss Plaintiff's remaining claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff's motion to file an amended complaint pursuant to Rule 15(a)

of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion to amend.

## I.  BACKGROUND

The facts underlying this case were thoroughly discussed in the Court's March 24, 2011 Memorandum and Order. *See In re UBS AG ERISA Litig.*, No. 08-cv-6696 (RJS), 2011 WL 1344734, at *1–3 (S.D.N.Y. Mar. 24, 2011) ("March 24 Order"). Nevertheless, a brief recitation of key facts and procedural history is needed to place the instant motion in context.

### A.  Facts

UBS is a Swiss bank and financial institution that provides wealth management services to clients worldwide.[2]  (Compl.

---

[1] The relevant claims of the Consolidated Amended Class Action Complaint (Doc. No. 22 (the "Amended Complaint" or "Compl.")) name UBS AG, the Executive Board of UBS AG (the "Board"), and the Retirement Board and Savings Plan Committee (the "SIP Committee") as Defendants, as well as the following board and committee members: Barbara Amone, Stephen Baid, Simon Canning, Michael Daly, Richard Duron, Per Dyrvik, Ursula Mills, Edward O'Dowd, Joe Scoby, Jaime Taicher, Robert Wolf, Marten Hoekstra, and Raoul Weil. Unless otherwise noted, "UBS" and the "Company" refer to Defendant UBS AG and its wholly-owned subsidiaries.

[2] The facts are drawn from the Amended Complaint filed on November 14, 2008. (Doc. No. 22 (the "Amended Complaint" or "Compl.").)  In deciding Defendants' motion, the Court has considered Defendants' memorandum of law in support of their motion to dismiss (Doc. No. 84 ("Mem.")), Plaintiff's

¶ 16.)  In 2000, UBS developed a plan to expand into the United States investment banking market by, among other things, acquiring large quantities of fixed-income assets.  These assets included residential mortgage backed securities ("RMBS") and collateralized debt obligations ("CDOs"), which were made up almost exclusively of American subprime mortgages.  (Compl. ¶¶ 99, 103.)  Over the next several years, UBS amassed a $100 billion portfolio consisting of these assets.  (Compl. ¶ 103.)  In October 2007, UBS began taking large write-downs of these holdings, eventually resulting in $43 billion worth of write-downs by August 2008, leading to the Company's first ever annual loss and a precipitous drop in its share price.  (Compl. ¶¶ 120, 160).

During this time, UBS offered its employees several retirement benefit plans, including the UBS Savings and Investment Plan (the "SIP").[3]  (Compl. ¶¶ 38–48.)  The SIP, which is an "individual account" plan governed by ERISA, "provides for individual accounts for each Participant and for benefits based *solely upon the amount contributed to the Participants' account*, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts."  (Compl. ¶ 41 (emphasis added).)  Thus, a participant's "retirement benefits provided by the SIP are based *solely on the amounts allocated to each individual's account*."  (Compl. ¶ 41 (emphasis added).)

Under the terms of the plan, participants voluntarily contribute to the SIP and "direct the SIP to purchase investments with those contributions from options pre-selected by [the SIP Committee] which are then allocated to Participants' individual accounts."  (Compl. ¶ 42; *see also* Declaration of Robert J. Giuffra, Jr., dated Sept. 25, 2013, Doc. No. 85 ("Giuffra Decl."), Ex. 2 ("SIP Plan Doc."), art. 9.1(b) ("[I]nvestment . . . shall be made *in accordance with the Member investment elections* in effect from time to time." (emphasis added)).  The SIP's "assets are invested in a master trust which in turn invests in mutual funds, commingled funds, separately-managed accounts, and the UBS Company Stock Fund," in accordance with individual participants' investment elections.  (Compl. ¶ 44; *see also* SIP Plan Doc. art. 9.1(b) ("Contributions and all other funds credited to Member Accounts under the [SIP] shall be invested in the Investment Funds provided for under the Plan.").)  Thus, each participant had control over the composition and size of their investments in the specific investment options presented by the SIP.

The UBS Company Stock Fund – which "tracked the performance of underlying common stock of UBS" (Compl. ¶ 2) – was offered as an investment option to SIP participants throughout the putative class period[4] despite UBS's lack of diversification and heavy investment in RMBS and CDOs.  (Compl. ¶¶ 2, 4.)  Under the terms of the SIP, the SIP Committee was also empowered to amend the menu of investment options by eliminating an existing choice and/or adding new options.  (SIP Plan Doc. art. 9.2.)  Because the SIP offered the UBS Company Stock Fund as an

memorandum of law in opposition (Doc. No. 86 ("Opp'n")), Defendants' reply memorandum of law (Doc. No. 88 ("Reply")), and the documents submitted in support thereof (Doc. Nos. 85, 87).

[3] The Amended Complaint also included claims – not relevant to the instant motion – against another employee benefit plan offered by UBS during the class period.  (*See, e.g.*, Compl. ¶ 57.)

[4] The putative class period spans from March 13, 2007 until October 16, 2008.  (Compl. ¶ 2.)

investment option to UBS employees, it is termed an employee stock ownership plan ("ESOP").

### B. Procedural History

Plaintiff filed the initial complaint on behalf of herself and all others similarly situated on July 28, 2008. (Doc. No. 1.) Plaintiff's complaint was consolidated with those of three other plaintiffs, and an Amended Complaint was filed on November 14, 2008, alleging that Defendants breached their duties to the SIP by failing to eliminate the UBS Company Stock Fund from the menu of investments at the time of the financial crisis. (*See* Doc. No. 22.) On March 24, 2011, the Court granted Defendants' motion to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (*see* March 24 Order) and, on March 23, 2012, denied Plaintiffs' motions to alter the judgment or amend the Amended Complaint (*see* Doc. No. 69 (the "March 23 Order")). On appeal, the Second Circuit affirmed the dismissal of claims related to another UBS employee benefits plan – the UBS Financial Services Inc. 401(k) Plus Plan (the "Plus Plan") – but vacated the dismissal of Plaintiff's claims related to the SIP, remanding the case to this Court. *See Taveras v. UBS AG*, 708 F.3d 436, 446 (2d Cir. 2013) (holding that claims against the SIP were improperly dismissed because this Court applied a presumption of prudence to the SIP-related claims). Thus, the following claims brought solely by Plaintiff Taveras remain before the Court: breach of the duties of prudence and loyalty against UBS, the Board, and the SIP Committee (Count I); breach of the duty to monitor against UBS and the Board (Count III); and co-fiduciary

liability against UBS, the Board, and the SIP Committee (Count V). (*See* Doc. No. 77.)[5]

On June 7, 2013, after the Second Circuit vacated the dismissal of Plaintiff's claims against the SIP, the Court granted Plaintiff leave "to amend the current Amended Complaint by shortening the putative class period." (Doc. No. 77 at 2.) Plaintiff did not avail herself of this option. Defendants then moved to dismiss the remaining SIP-related claims on July 22, 2013 and submitted a memorandum in support of their motion on the same day. (Doc. Nos. 78, 80.) Before Plaintiff responded, however, the Court denied the motion without prejudice to renewal, noting that similarly situated appellants in a separate action before the Second Circuit – *Rinehart v. Akers*, No. 11-4232 (2d Cir.) – had petitioned the Second Circuit for a rehearing in that case and that resolution of that motion for rehearing could be informative in the instant case. (Doc. No. 82.) Following the Second Circuit's denial of the petition for rehearing in *Rinehart v. Akers*, Defendants timely filed a renewed motion to dismiss the remaining claims against the SIP on September 25, 2013. (Doc. No. 83.) The motion was fully submitted on November 8, 2013. (Doc. Nos. 86–88.)

On June 26, 2014, the Court received a letter from Defendants informing the Court of the Supreme Court's recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), and discussing the decision's potential impact on the instant motion to dismiss. (Doc. No. 89.) Plaintiff's counsel responded to Defendants'

---

[5] Although the Second Circuit vacated the Court's dismissal of Counts I, III, V, and VI as to the SIP-related claims, *see Taveras*, 708 F.3d at 444–47, Plaintiff has since abandoned Count VI, which sought quantum meruit relief (*see* Opp'n at 1 n.2).

letter on July 11, 2014 and, *inter alia*, sought leave to move on behalf of the Plus Plan Plaintiffs for relief, pursuant to Rule 54(b), from the Court's dismissal of the Plus Plan claims in light of the Supreme Court's decision in *Dudenhoeffer*. (Pl. Pre-Motion Letter, July 11, 2014, Doc. No. 90 ("Pl. PML").)[6] Defendants replied on July 16, 2014. (Doc. No. 91.) At a conference on August 7, 2014, the Court deemed the Plus Plan Plaintiffs' Rule 54(b) motion made and denied it; the Court also scheduled oral argument for September 3, 2014 on the instant motion to dismiss. (Doc. No. 96.) Thereafter, the Plus Plan Plaintiffs moved for reconsideration of that denial or, in the alternative, certification for interlocutory appeal. (Doc. Nos. 98, 99.) Prior to oral argument on September 3, 2014, the Court denied the Plus Plan Plaintiffs' motion for reconsideration or certification for interlocutory appeal. (Transcript of Oral Argument, Sept. 3, 2014, Doc. No. 103 ("Oral Arg. Tr.") at 2:7–21.)

Thus, the motions remaining before the Court are Defendants' motion to dismiss Plaintiff Taveras's remaining claims and Plaintiff Taveras's motion to amend.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Defendants move to dismiss the remaining claims of the Amended Complaint for lack of standing and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. However, because the Court concludes that Plaintiff lacks standing, the Court need not, and in fact may not, address Defendants' Rule 12(b)(6) arguments. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (7 Wall. 506) (1868) (internal quotation marks omitted))).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the . . . constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Accordingly, Rule 12(b)(1) is the proper procedural vehicle for challenges to a plaintiff's standing to sue. *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87–88 (2d Cir. 2006). As the party "seeking to invoke the subject matter jurisdiction of the . . . court," the plaintiff bears the burden of demonstrating the court's jurisdiction over its claim. *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996). In deciding a motion to dismiss pursuant to Rule 12(b)(1), a "court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings, such as affidavits . . . ." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Motion to Amend

Rule 15(a)(2) permits a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While generally "[t]he court should freely give leave when justice so requires," *id.*, there are times when granting such leave may be inappropriate, *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d

---

[6] In the July 11, 2014 letter, Plaintiff Taveras also sought leave to amend the Amended Complaint "in light of the Supreme Court's recent ruling in . . . *Dudenhoeffer*" pursuant to Rule 15(a). (Pl. PML at 1.) The Court deems the motion to amend made and will address it in section III.B *infra*.

Cir. 1998) ("[A] motion to amend should be denied if there is an apparent or declared reason – such as undue delay, bad faith or dilatory motive[], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." (alterations in original) (citation and internal quotation marks omitted)).   The Second Circuit has cautioned that "Rule 15(a)'s liberal amendment policy should not be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citation and internal quotation marks omitted).

"While pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, Nos. 06-cv-643, 07-cv-8686, 07-cv-8688 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (citations and internal quotation marks omitted).   To grant leave to amend after a plaintiff has had ample opportunity to amend "would be condoning a strategy whereby plaintiffs hedge their bets by holding . . . evidence back in the hopes of having another bite at the proverbial apple." *In re Crude Oil Commodity Litig.*, No. 06-cv-6677 (NRB), 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 7, 2007) (citation and internal quotation marks omitted).

## III.  DISCUSSION

The Court turns first to Defendants' motion to dismiss pursuant to Rule 12(b)(1). Because Plaintiff lacks standing to assert the SIP-related claims that remain, the Court grants Defendants' motion to dismiss.  Next, the Court addresses Plaintiff's motion to amend pursuant to Rule 15(a)(2), finding that granting leave to amend at this stage of the litigation is not warranted.

### A.  Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of "[c]ases" and "[c]ontroversies."  U.S. Const. art. III, § 2; *see also City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." (citations omitted)).   One aspect of this case-or-controversy requirement is that the party invoking the jurisdiction of the federal judiciary establish "standing" to sue.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Standing consists of three "irreducible" constitutional elements: (1) an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations, citations, and internal quotation marks omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at

561. "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).

These constitutional standing requirements necessarily extend to claims brought by a retirement plan participant suing under ERISA. Such a plaintiff "must establish . . . constitutional standing, meaning the plan participant must . . . assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) (citation omitted). In a putative class action brought under ERISA, "once standing is established for a named plaintiff, standing is established for the entire class." *Id.* (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-MedCo Managed Care L.L.C.* (*Central States II*), 504 F.3d 229, 241 (2d Cir. 2007)); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-MedCo Managed Care L.L.C.* (*Central States I*), 433 F.3d 181, 199 (2d Cir. 2005) ("[T]he named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quoting *Warth v. Selding*, 422 U.S. 490, 502 (1975))).

In *Kendall*, the Second Circuit rejected the plaintiff's argument that "she need not show individualized harm as a[n ERISA p]lan participant under [29 U.S.C.] § 1132(a)[] to assert constitutional standing . . . ." 561 F.3d at 118. The Second Circuit reasoned:

[Alleging breach to show deprivation of a right to be free from breach] is obviously circular. While plan fiduciaries have a statutory duty to

comply with ERISA . . . , [plaintiffs] must allege some injury or deprivation of a specific right *that arose from* a violation of that duty in order to meet the injury-in-fact requirement. [The plaintiff] cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing.

*Id.* at 121 (emphasis added) (citations omitted). With respect to actions to obtain "restitution or disgorgement under ERISA," the Second Circuit has made clear that "a plaintiff satisf[ies] the strictures of constitutional standing by demonstrating individual loss." *Central States I*, 433 F.3d at 200 (citation and internal quotation marks omitted).[7] Thus, to demonstrate a constitutionally justiciable injury under ERISA, plaintiffs must allege that they suffered specific losses as a result of the alleged breach of fiduciary duty. *See*

---

[7] Under ERISA, "[r]equests for restitution or disgorgement . . . are different from requests for injunctive relief," *Central States I*, 433 F.3d at 200, and with respect to plaintiffs seeking the latter form of relief, "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant," *id.* at 199. Insofar as Plaintiff's general requests for injunctive relief remain viable (*see, e.g.*, Am. Compl. Prayer for Relief ¶¶ E, F), the Court finds that because she is no longer a participant in the SIP (*see* Giuffra Decl. Ex. 1 ("Trading History" or "Trad. Hist.")), she lacks standing to pursue those remedies. *See, e.g., Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." (citing *Lyons*, 461 U.S. at 105–106)).

*Kendall*, 561 F.3d at 119–20 (dismissing plaintiff's ERISA damages claim for lack of standing when plaintiff failed to demonstrate financial loss in addition to allegations of defendant's breach of fiduciary duty); *see also Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012) (interpreting *Kendall* as holding that alleged violations of public rights created by ERISA are insufficient Article III injuries-in-fact in actions for money damages absent a showing of individualized harm).

Defendants argue that Plaintiff lacks standing to bring her claims in federal court since the Amended Complaint makes no allegations demonstrating Plaintiff's individual loss. (Mem. at 25; Reply at 10.) The Court agrees. In the 83-page Amended Complaint, there are only two paragraphs that, when read in conjunction, purport to allege an injury-in-fact sustained by Plaintiff. The first, paragraph 12, states flatly that "Plaintiff is a former UBS employee and is a participant in the SIP." (Compl. ¶ 12.) The second, paragraph 236, states: "As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan[], and indirectly Plaintiff[] and the Plan['s] other Participants and beneficiaries, lost a significant portion of [its] investments meant to help Participants save for retirement." (Compl. ¶ 236.) At oral argument, Plaintiff conceded that the Amended Complaint lacks any other allegations that touch upon a constitutionally cognizable injury. (*See* Oral Arg. Tr. at 19:13–23 ("THE COURT:  [Paragraph] 236 is really . . . it, right?  MR. RIFKIN:  And that is it.  And what we say in paragraph 236, which is a relatively simple, straightforward paragraph, we say that the plan has been injured, and the individual participants have been indirectly injured as a result of the breaches of fiduciary duty that are enumerated elsewhere in the complaint.").)    Thus, the Amended

Complaint does not allege whether – let alone when – Plaintiff, through the SIP, purchased shares of the UBS Company Stock Fund or when she sold those shares or the amounts of those investments.  Nor does it provide any basis whatsoever for connecting Plaintiff's purported losses to the fiduciaries' alleged breaches.

Significantly, this is not a case where any diminution in the value of the SIP's assets would necessarily impact the value of each SIP participant's account. As set forth in the Amended Complaint, SIP participants directed the SIP to make investments on their behalf by choosing from a menu of investment options selected by the SIP's fiduciaries. (*See* Compl. ¶ 42.)  In turn, the SIP used funds from the participant's account to purchase shares in accordance with the participant's directives. (*See* Compl. ¶¶ 41–42.)  Consequently, since a participant's "retirement benefits provided by the SIP are based *solely on the amounts allocated to each individual's account*," each participant's individual SIP account was comprised of only the investments they personally selected. (Compl. ¶ 41 (emphasis added); *see also* Oral Arg. Tr. at 66:8–10 ("The individual participants merely contribute money to the plan[], and then instruct the [administrators of the plan] how those plan investments are to be allocated.").)  It necessarily follows that Plaintiff can only demonstrate a constitutionally sufficient injury by pointing to her *individual account's specific losses* during the class period.  Given the nature of the SIP, Plaintiff cannot indirectly establish an injury-in-fact simply by claiming that the SIP itself suffered losses.

Plaintiff disputes this conclusion and contends that an individual plaintiff need only "allege some interest in the recovery by the plan" (Oral Arg. Tr. at 20:18), relying on legal authority suggesting that an ERISA

plan participant need not show a direct, individualized injury to establish standing (Oral Arg. Tr. at 20:14–16 ("[A]ll of the cases that are relevant and germane and talk about damages in an ERISA case, talk about harm to the plan, as opposed to harm to individuals."); *id.* at 37:7–10 ("All of these cases . . . , all of them look at damages at the plan level, not at the individual investor level.")).   But that reliance is misplaced, since those decisions involved ERISA plans that *managed* assets on behalf of plan participants, with each participant's financial fortune tied to the plan's overall success (or failure).   For instance, *Donovan v. Bierwirth*, on which Plaintiff principally relies, involved an ERISA plan that empowered the plan trustees to actively select and manage the plan's assets on behalf of the participants.   *See* 754 F.2d 1049, 1051–52 (2d Cir. 1985).   Under this type of plan, each participant would necessarily be harmed by any losses sustained by the plan as a result of a breach of fiduciary duty.   Similarly, the ERISA plan in *Dardaganis v. Grace Capital Inc.* empowered a registered investment advisor to "manage the [plan's a]ccount" subject to certain specified guidelines regarding the "proportion of fund assets that . . . could [be] invest[ed] in common stocks."   889 F.2d 1237, 1239 (2d Cir. 1989).   Once again, the breach of fiduciary duty alleged in that case necessarily caused the value of the plan to diminish, to the detriment of all plan participants.   *See also L.I. Head Start Child Develop. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 67 n.5 (2d Cir. 2013) (finding constitutional standing on the basis of derivative injury in case involving ERISA welfare benefits plan managed on behalf of participants).

Here, by contrast, the ERISA plan at issue – the SIP – did not involve the direct and active management of the participants' assets, but instead simply empowered the

SIP's fiduciaries to present investment options to the SIP participants.   Thus, the SIP could not sustain *plan* losses that would necessarily injure each participant.   In this context, where the SIP's participants made their own investment decisions about their individual accounts, albeit based on options selected by the SIP fiduciaries, the Second Circuit's clear command in *Kendall* requires Plaintiff to allege that she did, in fact, suffer an individualized harm through her investment in the UBS Company Stock Fund.   In fact, the plaintiff in *Kendall* had brought suit under 29 U.S.C. § 1132(a) – the same provision under which Plaintiff has brought suit (*see* Compl. ¶ 236) – and the Second Circuit found the plaintiff's assertion that she need not show individualized harm under § 1132(a) to be "a clear misstatement of law," 561 F.3d at 119; *see also Donoghue*, 696 F.3d at 178 ("[In *Kendall*,] we held that an ERISA plaintiff bringing a disgorgement claim could not satisfy the injury requirement of standing by alleging defendant's general breach of fiduciary duty under ERISA without a showing of individualized harm." (citation and internal quotation marks omitted)).   Once again, the Amended Complaint contains no such allegation and merely relies on a general theory that all SIP participants were "indirectly injured if they had UBS stock in their plan accounts during the class period."   (Oral Arg. Tr. at 21:16–18; *see also id.* at 21:19–21 ("If the plan lost money on the UBS stock fund investment, then they lost money on the UBS stock fund investment.").)   As pleaded, the Amended Complaint contains no facts as to whether or when Plaintiff directed the SIP to purchase or sell shares of the UBS Company Stock Fund on her behalf, and therefore provides no basis from which an injury-in-fact can be inferred.

Forced to acknowledge the dearth of facts contained in the Amended Complaint

(Oral Arg. Tr. at 19:8–23), Plaintiff weakly asserted for the first time at oral argument that Plaintiff's Trading History – which Defendants included as an exhibit to a declaration filed in support of the instant motion – somehow demonstrates an injury-in-fact stemming from Plaintiff's investment in the UBS Company Stock Fund.[8]  In fact, the Trading History does no such thing.  The contents of the "Amount" column in the document are redacted, thereby omitting critical information concerning the number of shares involved in each transaction listed. In addition, the "Activity Description" column does not identify the specific investment funds involved in each transaction.  As a whole, the Trading History sheds little light, if any, on Plaintiff's investment in the UBS Company Stock Fund and provides no basis whatsoever for the Court to infer an injury-in-fact flowing from that investment, particularly in light of the absence of any facts pleaded in the Amended Complaint that would support such an inference.[9]

In sum, the Court finds that Plaintiff lacks standing to sue under ERISA because she has not alleged the existence of a constitutionally cognizable injury. Consequently, Plaintiff's failure to "satisfy the strictures of constitutional standing by demonstrating individual loss" deprives the Court of jurisdiction.  *Central States I*, 433 F.3d at 200 (citation and internal quotation marks omitted).

B.  Motion for Leave to Amend

In a letter to the Court dated July 11, 2014, Plaintiff sought leave to make a Rule 15(a) motion to file another amended complaint "in light of the Supreme Court's recent ruling in . . . *Dudenhoeffer*."  (Pl. PML at 1.)  For the reasons that follow, the Court deems Plaintiff's motion made and denies it.

First, it should be noted that this motion "would not be Plaintiff['s] first opportunity to amend [her] complaint . . . [as] Plaintiff[] ha[s] filed multiple complaints – at least one making substantive amendments for purposes of Rule 15(a) analysis . . . ." (March 23 Order at 7.)  The Court has already denied one such motion to amend the Amended Complaint, reasoning that "the time for Plaintiff[] to make a motion to amend under Rule 15(a) has . . . come and gone."  (*Id.*)  The Second Circuit affirmed that denial by the Court.  *See Taveras v. UBS AG*, 513 F. App'x 19, 22–23 (2d Cir. 2013).[10]

---

[8] The law is clear that, to the extent that there are jurisdictional facts in dispute, courts may consider evidence introduced outside the pleadings when considering a motion to dismiss for lack of subject matter jurisdiction.  *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145–46 (2d Cir. 2011); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd* 561 U.S. 247 (2010); *Zappia Middle East Constr. Co.*, 215 F.3d at 253.

[9] If anything, the Trading History demonstrates that Plaintiff may have actually benefited from the artificial inflation that is central to the various breaches alleged in the Amended Complaint. According to the Trading History, Plaintiff divested her entire SIP account of all assets, including presumably any interest in the UBS Company Stock Fund, on July 8, 2008.  (Trad. Hist. at 4.)  This date of divestiture preceded the end of the putative class period, which, according to Plaintiff, ran from March 13, 2007 through October 16, 2008.  (Compl. ¶ 2.) Given the nature of the allegations here – whereby the UBS Company Stock Fund is alleged to have been vastly inflated as a result of misstatements and

omissions by the Company (Compl. ¶ 86) – the Trading History suggests that Plaintiff sold her holdings in the UBS Company Stock Fund while the share price was still inflated and *before* corrective disclosures caused the price to fall back to a level reflecting its actual value (*see* Giuffra Decl. Ex. 12 (listing share price history of UBS stock)).

[10] As noted above, the Second Circuit did direct the Court to grant Plaintiff leave to amend in order to

9

Second, Plaintiff's assertion that the Supreme Court's decision in *Dudenhoeffer* has changed the landscape for claims arising under ERISA overshoots the mark. (*See* Pl. PML at 2 ("[T]he Supreme Court unanimously ruled that a 'presumption of prudence' does not apply to a fiduciary's decision to invest in company stock in a retirement plan, thereby fundamentally altering the pleading standard for ERISA duty of prudence claims in the Second Circuit." (citation omitted)).)   In this case, the Second Circuit already determined that the presumption of prudence does not apply to the SIP.   As a result, the Supreme Court's rejection of the presumption of prudence *in general* has little impact on this case in its present posture.[11]

---

*shorten* the putative class period. *Taveras*, 513 F. App'x at 22–23; (*see also* Doc. No. 77).   However, Plaintiff did not avail herself of that opportunity to amend. (*See* Doc. Nos. 77–78.)

[11]   It could be argued that the Supreme Court's decision in *Dudenhoeffer* has, if anything, *raised* the bar for plaintiffs seeking to bring a claim based on a breach of the duty of prudence.   *See* 134 S. Ct. at 2471 ("In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."); *id.* ("ERISA fiduciaries, who . . . could reasonably see 'little hope of outperforming the market . . . based solely on their analysis of publicly available information,' may, as a general matter, . . . prudently rely on the market price." (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2411 (2014)). Notwithstanding the uphill battle Plaintiff's claims would face in any adjudication on the merits, Plaintiff's lack of standing deprives the Court of jurisdiction to reach Defendants' Rule 12(b)(6) arguments.   *See Steel Co*, 523 U.S. at 94; *see also Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011) ("Because the district court dismissed [the plaintiff's] claim for lack of standing, however, it lacked jurisdiction to adjudicate [the defendant's] alternative motion to dismiss for failure to state a claim." (citation omitted)).

Finally, and most significantly, Plaintiff's lack of standing to pursue the SIP-related claims renders any attempt by Plaintiff to replead in the aftermath of *Dudenhoeffer* an exercise in futility.   To the extent that Plaintiff wishes to amend the complaint to allege new facts to establish a constitutionally cognizable injury-in-fact – something Plaintiff has not articulated – that request is denied.   Plaintiff has had ample opportunity to plead and replead facts with respect to standing, and there has certainly been no intervening change in the law regarding that standard. Since at least 2005, the Second Circuit has made clear that "[o]btaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrat[ing] individual loss, to wit, that they have suffered an injury-in-fact." *Central States I*, 433 F.3d at 200 (citations and internal quotation marks omitted).   Accordingly, the Court finds that providing Plaintiff with another opportunity to amend the operative pleading would be futile.

## IV. CONCLUSION

Because Plaintiff lacks standing to pursue the claims that remain in this action, Defendants' motion to dismiss is granted. Additionally, because Plaintiff fails to satisfy the standards for leave to amend under Rule 15(a), Plaintiff's motion seeking leave to amend is denied.   The Clerk of the

Court is respectfully directed to terminate the motion located at docket entry 83 and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 29, 2014
New York, New York

＊　　＊　　＊

Plaintiffs are represented by Mark C. Rifkin and David Lloyd Wales, Wolf Haldenstein Adler Freeman & Herz LLP, 270 Madison Avenue, New York, NY 10016; Thomas James McKenna, Gainey McKenna & Egleston, 440 Park Avenue, South Fifth Floor, New York, New York 10016; and Todd S. Collins, Berger & Montague, P.C., 1622 Locust Street, Philadelphia, Pennsylvania 19103.

Defendants are represented by Robert Joseph Giuffra, Jr., Andrew Paul Giering, Matthew Alexander Schwartz, Suhana S. Han, and Thomas Charles White, Sullivan & Cromwell, LLP, 125 Broad Street, New York, New York 10004.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/29/2014_